Alvin F. Klein, J.
The within summary proceeding presents a novel and interesting problem for decision. The landlord seeks to recover rent from the tenant in the sum of $150 on the ground ‘ ‘ that emergency commercial and business space rent control laws have terminated as of December 31, 1963, and present City Rent Administration cannot assert any regulatory power over the value of business or commercial space within the confines of an apartment as a matter of constitutional right.”
The evidence adduced at the trial herein shows that Burton P. Sherryl, a chiropractor, about June, 1950, became a tenant of the 5-room apartment, known as 1-B on the first floor in premises 65 East 193rd Street, The Bronx, New York City. The premises is a 6-story elevator building with 42 tenants.
Prior to SherryPs taking possession of this apartment it was occupied by one Max Kugelman, a chiropractor, under an “ apartment lease” for the term of September 1, 1948, to August 31, 1950, at a monthly rental of $125. Max Kugelman practiced chiropractic from this apartment with the knowledge and consent of the same corporate owner herein. About June, 1950, two months before the expiration of said lease, Burton F. Sherryl purchased the practice of Max Kugelman for the sum of $3,000 and moved into apartment 1-B. He did not *517 take over Max Kugelman’s lease or enter into any new lease with the landlord, Avecrest Realty Co., Inc. He became a month-to-month tenant.
When Burton P. Sherryl moved into apartment 1-B he paid $125 per month rent. By order of the Local State District Rent Director issued on June 3, 1953, his rent was increased to $126.50 as of May 1, 1953. On April 14, 1961, because of rewiring in the apartment, his rent was increased $2.75 by the District Director to the sum of $129.25.
From the first day Sherryl moved into apartment 1-B as a tenant, he practiced chiropractic from this apartment. The evidence indicates clearly that he had the permission of the landlord to practice chiropractic.
Prior to instituting the within summary proceeding, sometime in 1960, the landlord herein, pursuant to section 36 of the Rent and Eviction Regulations of the State Temporary Housing Rent Commission brought a proceeding before said Rent Commission to determine the maximum rent of tenant’s housing accommodations. The Rent Commission established the maximum rent at $126.50.
Also, sometime in 1961 the landlord brought a proceeding before the State Temporary Housing Rent Commission to decontrol this tenant’s apartment on the ground that the predominant use by Sherryl was for business space. The landlord’s application was denied by the Rent Commission.
The question that must be answered in this summary proceeding is: Did the termination of the State Emergency Commercial and Business Space Rent Control Laws as of December 31, 1963, take away from the present New York City Rent Administrator the authority to exercise jurisdiction and control over the combined dwelling and business use of the housing accommodations such as are involved herein? This question must be answered in the negative.
Local Law No. 20 (1962) known as New York City Rent and Rehabilitation Law (§ Y51-3.0, subd. [e], par. 1), defines “ Housing accommodation ” as follows: “ any building or structure, * * * occupied * * * as a residence, home, sleeping place * * * and all services, privileges * * * supplied in connection with the occupation thereof ”.
The occupancy of apartment 1-B by Sherryl, the tenant, falls within the scope of the aforesaid definition. Sherryl used the apartment as his residence with the privilege of conducting the practice of chiropractic therein.
The residential and business uses conducted in tenant’s apartment herein are physically unseverable.
*518 There was convincing evidence that the landlord rented the apartment knowing that it was to be used essentially for a housing accommodation. The predominant portion of the apartment was occupied by Sherryl and his family for their residence. This was borne out by the landlord’s own witness, William Hickey, the superintendent of the premises. (See City Bank Farmers Trust Co. v. Glidden, 86 N. Y. S. 2d 64.)
The present City Rent Administrator has jurisdiction and control over the within apartment which contained the entire combined residence and business areas. Like the State Emergency Housing Rent Control Law, there are ample provisions in the present New York City Rent and Rehabilitation Law for the landlord to apply for a rent adjustment, if it is warranted. (See New York City Local Law No. 20 [1962], i.e., § Y51-5.0. See, also, New York City Rent, Eviction and Rehabilitation Regulations, §§ 13, 33.1.)
It must be noted that on June 12, 1964 the City Rent Administrator issued an order reducing the rent as to Sherryl’s apartment from $129.25 to $116.50 because of the landlord’s failure to paint the apartment and clean and shellac the floors. The landlord did not protest this order.
Accordingly, I find judgment for the tenant, dismissing the petition on the merits.